Argued and submitted January 7, judgments reversed and vacated in part; sentences of death affirmed in part; case remanded to circuit court for further proceedings August 14, 2003

## STATE OF OREGON,
*Respondent,*

*v.*

## CONAN WAYNE HALE,
*Appellant.*

## (CC 109604830; SC S45391)

75 P3d 612

Mary M. Reese, Deputy Public Defender, Salem, argued the cause for appellant. With her on the briefs was David E. Groom, State Public Defender.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jonathan Fussner, Timothy Sylwester, and Joanna L. Jenkins, Assistant Attorneys General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

GILLETTE, J.

* Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

**GILLETTE, J.**

This case comes before this court on automatic and direct review of defendant's judgments of conviction and sentences of death. ORS 138.012(1); ORAP 12.10(1). Defendant seeks reversal of his convictions and sentences of death for 13 counts of aggravated murder involving three victims, as well as reversal of his convictions for five counts of kidnapping in the first degree, one count of rape in the first degree, two counts of sodomy in the first degree, one count of unlawful sexual penetration in the first degree, and one count of sexual abuse in the first degree. In the alternative, defendant asks this court to vacate his sentences of death and remand the case for resentencing. For the reasons that follow, we reverse six of the 13 convictions of aggravated murder and remand those charges to the trial court for further proceedings. We affirm the other convictions and the sentences of death. In addition, because we agree with defendant that the aggravated murder convictions involving the same victims merge, we also remand the remaining convictions of aggravated murder for entry of a corrected judgment reflecting three convictions for aggravated murder based on alternative aggravating factors and imposing a single sentence of death for each conviction.

## FACTS

Because the jury found defendant guilty, we review the evidence in the light most favorable to the state. *State v. Compton*, 333 Or 274, 276, 39 P3d 833, *cert den*, 123 S Ct 165, *reh'g den*, 123 S Ct 653 (2002).

In late 1995, defendant, then 19, and his friend, Jon Susbauer, then in his early twenties, began committing a series of burglaries and robberies in the Eugene area. As pertinent here, on December 14, 1995, defendant and Susbauer broke into a woman's home, stole several thousand dollars worth of her property, and slashed a couch and a stereo speaker with a knife before leaving.

At around midnight on December 16, 1995, defendant and Susbauer drove up beside a car parked on an isolated road in a remote wooded area in Eugene. The men were in a silver, Chevrolet Suburban that Susbauer had stolen a

few weeks earlier. Two teenagers, Kara Krause and Jesse Jarvis, were in the parked car. The person on the passenger side of the Suburban got out, approached the parked car, and knocked on the window. He told the couple that they were on his property but that they could stay. He then returned to the Suburban and Jarvis heard laughter. The Suburban drove off.

A few minutes later, Jarvis heard a man yelling. Jarvis got out of the parked car to investigate and, he later testified, a man "jumped out of nowhere." The man was large and stocky. He was dressed in dark clothing and wore a long coat. His head and face were covered with some kind of mask or scarf; only his eyes were visible. He carried something that looked like a machete and was swinging it like a sword. He spoke in a low rough growl and threatened Jarvis with the machete. He ordered Krause out of the car and told them both to take off their clothes and shoes. When they had complied, the man threw the couple's car keys, clothes, and shoes into the woods. The man forced Jarvis to lie on the ground and Krause to lie across the hood of the car. He threatened Krause with the blade of the machete and sexually assaulted her.

Jarvis later told police that he thought that the person who claimed to be the "property owner" and the rapist were different people. Weeks later, at two police lineups, Jarvis identified Susbauer as the "property owner" and defendant possibly as the rapist. Krause was not able to identify the rapist when shown the same lineups.

On December 19, 1995, defendant and Susbauer broke into another house and again stole thousands of dollars worth of property including, among other things, a rabbit-fur jacket, a .38 caliber Taurus revolver with wooden grips, and 25 rounds of ammunition for the revolver. Before they left, they again slashed the furniture with a knife.

Late in the evening on December 20, defendant and Susbauer were riding around in the stolen Suburban. Susbauer was driving. They saw defendant's former girlfriend, Kristal Bendele,[1] 15, her current boyfriend, Brandon

---

[1] Defendant had had a sexual relationship with Bendele the year before, when she was 14.

Williams, 15, and two other young people, Patrick Finley, 13, and Michael Black, 15. Defendant and Susbauer drove toward them and parked the Suburban. Defendant got out of the Suburban. He was wearing a black trench coat and jeans. Defendant offered the teenagers a ride, which Bendele, Williams and Finley accepted. Black declined. As Black walked away, he saw the Suburban slowly drive off in a different direction.

The next afternoon, December 21, 1995, two men found the nude bodies of Williams and Bendele at a logging landing on McGowan Creek. Bendele had been shot twice, once in the back and once in the left temple. Williams had been shot five times; three shots were to the head and face, one to the chest, and one to the back. Finley, barely alive, also was lying nearby. He, too, had been shot twice, once in the head and once in the shoulder. Among other things, he was wearing the rabbit-fur jacket that defendant and Susbauer had stolen in the earlier burglary. Finley died four days later without ever regaining consciousness.

Police visited Susbauer at his home on December 24, 1995, and seized the .38 caliber Taurus revolver stolen during the December 19 burglary. On December 26, police searched defendant's bedroom. There, they seized a black trench coat and a machete.

The Taurus revolver later was proved to be the murder weapon; all the bullets recovered at the scene and from the bodies of the victims had been fired from that gun. Testing of the grip of the revolver revealed a mixture of DNA patterns, the most predominant of which matched that of Bendele. Semen obtained from Bendele's mouth, vagina, and anus was identified as Susbauer's. Semen on Bendele's shirt and on the rabbit fur jacket that Finley was wearing was identified as defendant's.

Defendant and Susbauer both were charged with aggravated murder and various other crimes in the murders of Bendele, Williams, and Finley, in the assault on Jarvis and Krause, and in the December 14 and December 19 burglaries. Susbauer agreed to cooperate and pleaded guilty to, among other things, three counts of aggravated murder. Thereafter, the district attorney decided to seek the death penalty only against defendant.

At the ensuing trial, defendant's theory was that Susbauer was the rapist and killer and that he, defendant, merely was in the wrong place at the wrong time. Susbauer's story was the opposite: Defendant was the director of the abuse and murderer of all the victims; Susbauer was a secondary—and, in part, unwilling—accomplice. The jury rejected defendant's theory and convicted him of 13 counts of aggravated murder and multiple noncapital crimes arising out of the burglaries and the attack on Krause and Jarvis.

Defendant was sentenced on the noncapital crimes at the conclusion of the guilt-phase trial. The trial court then conducted a penalty-phase trial on the aggravated murder convictions. In that proceeding, the jury determined that defendant had acted deliberately in committing the murders, that he posed a continuing risk to society, and that he should receive a death sentence. The trial judge then entered a sentence of death.

On review, defendant raises 33 assignments of error, most of which are not well taken and do not require separate discussion. We analyze defendant's arguments respecting those assignments of error that do require discussion under three headings: pretrial issues, guilt-phase issues, and penalty-phase issues.

## PRETRIAL ASSIGNMENTS OF ERROR

Defendant raises eight assignments of error respecting matters that he raised in pretrial motions. Three of those assignments raise constitutional challenges to the Oregon death-penalty statute that this court previously has considered and rejected. Another presents a constitutional challenge to the exclusion of convicted felons and nonregistered voters from the jury pool that this court previously has considered and rejected. None of those assignments of error warrants additional discussion.

Defendant also demurred to the form of the indictment in this case on the ground that the six aggravated murder counts that alleged that he had committed murder to conceal the crime of third-degree sexual abuse and to conceal the identity of the perpetrator of the crime of third-degree sexual

abuse (counts 20, 21, 27, 29, 35, and 37) were impermissibly vague.[2] Specifically, defendant argued to the trial court that

"[defendant] is entitled to notice of the particulars of the offenses he is alleged to have committed. The offenses of sexual abuse in the third degree * * * are not charged anywhere in the indictment.

"The indictment does not say who is or were the victims of the offense of sexual abuse in the third degree. That's not set forth anywhere in the indictment. There are three decedents who are all potential victims of that crime. There's also Jonathan Susbauer, who is claiming to be a victim of some sort.

"The indictment does not say in what county the offense of sexual abuse in the third degree was committed. The indictment does not say when the offense of sexual abuse in the third degree was committed. The indictment does not say who the perpetrator or perpetrators of the offense of sexual abuse in the third degree are or were.

"* * * * *

"* * * This indictment can't go to the jury in the form it's in, suggesting that some sexual abuse in the third degree was committed somewhere at sometime by some persons and allowing the jury to return a verdict of guilty to that count without agreeing among themselves what sexual abuse we're talking about * * *."

Defendant asked the court to send the matter back to the grand jury for clarification of the specific facts and circumstances that constituted third-degree sexual abuse in each of the aggravated murder counts in which that crime was the aggravating factor.[3] The state responded by arguing that an

---

[2] Defendant was charged in three separate counts (one for each murder victim) with aggravated murder, based on each of two theories of responsibility for aggravated murder under ORS 163.095(2)(e). That statute provides that aggravated murder includes murder "committed in an effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime."

[3] Third-degree sexual abuse is defined in ORS 163.415 as follows:

"(1) A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact and:

"(a) The victim does not consent to the sexual contact; or

"(b) The victim is incapable of consent by reason of being under 18 years of age.

"(2) Sexual abuse in the third degree is a Class A misdemeanor."

indictment is sufficient if it tracks the wording of the statute, which the indictment in this case did. The trial court denied the demurrer.

This court addressed a similar issue in *State v. Lotches*, 331 Or 455, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). There, the defendant was charged with three counts of aggravated murder of one victim, based on three separate aggravating factors: that the murder was committed "in the course of and in the furtherance of and in the immediate flight from" the crime of attempted robbery; that the murder was committed "in the course of and in the furtherance of and in the immediate flight from" the crime of attempted second-degree kidnapping; and that the murder was committed in an effort to conceal the identity of the perpetrator of the crime of attempted murder. The defendant in *Lotches* asserted that the state and federal constitutions, as well as a state statute, give criminal defendants the right to be informed of the charges against them[4] and argued that the aggravated murder charges in the indictment failed to meet that standard because they failed to state the particular elements and circumstances that made up the offenses charged. Specifically, he contended that the vagueness of the aggravated murder charges in the indictment impermissibly would force the trial

In the present case, defendant was not charged with committing third-degree sexual abuse, but there was evidence that would support multiple theories of responsibility for third-degree sexual abuse by defendant. Codefendant Susbauer testified that, on the night of the McGowan Creek murders, Susbauer kissed and fondled Bendele, a nonconsenting person under the age of 18, and that both he and defendant raped and sodomized her. Susbauer claimed that defendant forced him to commit those sexual acts with Bendele, thus making him an additional victim of sexual abuse. Susbauer testified that defendant forced Bendele to perform fellatio on Williams, a person under the age of 18, thus making Williams another victim of sexual abuse.

[4] Article I, section 11, of the Oregon Constitution provides that,

"[i]n all criminal prosecutions, the accused shall have the right * * * to demand the nature and cause of the accusation against him, and to have a copy thereof; * * *."

The Sixth Amendment to the United States Constitution provides that,

"[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation; * * *."

In addition, ORS 132.550(7) requires indictments to contain, among other things,

"[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

court and the defendant to guess what factual and legal theories the grand jury had used, and impermissibly would permit the state to shift theories of the case after indictment. The defendant in *Lotches* had not demurred to the indictment, but nonetheless argued on direct review that the trial court should have stricken the aggravated murder charges on its own motion.

In considering that matter, this court observed that the defendant had not been charged with attempted second-degree kidnapping, although facts adduced at trial would have supported more than one such charge. Moreover, the indictment itself indicated that the defendant was alleged to have committed more than one attempted robbery and more than one attempted murder, each involving more than one victim. Under those circumstances, this court stated, the defendant "would have been entitled to require the state to specify which particular facts and circumstances made up the underlying crimes on which the charges of aggravated murder were based." *Id.* at 465.

However, the court did not go on to indicate precisely the *manner* in which the defendant was entitled to receive the information that he sought. In the final analysis, the court declined to overturn the indictment in *Lotches* on the ground that the deficiency of the aggravated murder counts was error apparent on the face of the record because, normally, objections to the sufficiency of the indictment not timely raised are waived, and because this court previously had stated repeatedly that an indictment that tracks the wording of the statute is sufficient. *Id.* at 465-66.

In this case, by contrast, defendant timely raised the issue by demurring to the indictment. Accordingly, this case presents squarely the question left unanswered in *Lotches*, *viz.*, whether defendant was entitled to require the state to make the indictment more definite and certain, and, consequently, whether the trial court's failure to grant defendant's demurrer was error.

*Lotches* proceeded with its analysis on the basis that omitting the specifics of certain alleged underlying offenses in the indictment might be error, but it never was required to, and did not, so hold. We continue to agree with defendant that, in this case, where the record would support more than

one incident of third-degree sexual abuse, defendant was entitled to know the state's precise theory of the case and which facts and circumstances the state was relying on to support the aggravated murder counts. However, we do not agree that requiring the trial court to sustain defendant's demurrer to the indictment is the proper (or only) vehicle for ensuring that defendant obtains the information that he seeks. Defendant had other avenues available to him for acquiring that information, such as later moving the court to require the state to elect a specific incident of third-degree sexual abuse, or requesting special jury instructions that clarify the matter.[5]

In light of the foregoing, we now confirm that, as this court so many times has held, an indictment generally is sufficient if it charges an offense in the words of the statute. *See, e.g., State v. Fair*, 326 Or 485, 490, 953 P2d 383 (1998) (stating and relying on rule; indictment for racketeering sufficient although did not set out specific nexus between predicate offenses); *State v. Montez*, 309 Or 564, 596-97, 789 P2d 1352 (1990) (aggravated murder; indictment alleging aggravating factor of concealment of other crimes sufficient, although did not set out elements of such other crimes). Here, there is no question that the indictment used the words of the pertinent aggravated murder statute; in fact, it went on to allege the underlying offenses. That was sufficient.[6] We find no error.[7]

---

[5] In the present case, the instructions that the court gave the jury on the aggravated murder counts did not contain any specifics respecting the underlying crimes, nor did they instruct the jury that, to convict, all jurors had to agree on the same underlying crime and the same perpetrator. Defendant did not object to the instructions in any way that is pertinent to the present discussion.

[6] Defendant argues that we should follow *State v. Sanders*, 280 Or 685, 688-90, 572 P2d 1307 (1977), and conclude that the indictment was insufficient. In that case, the court, after acknowledging the ordinary rule, nonetheless held that an indictment for burglary that alleged only that a person unlawfully had entered a building "with the intent to commit a crime therein" was insufficient, because it failed to identify which crime or crimes were contemplated. That requirement relates only to the genre of the underlying offense, however. *Sanders* does not stand for the further proposition that an indictment, after stating, for example, that a burglary defendant entered a building with intent to commit theft, also must state which object or objects within the building the person intended to steal.

[7] In this connection, defendant also contends that a similar argument could be made concerning the sufficiency of the aggravated murder charges that alleged that he committed murder to conceal the crime of murder (counts 26 and 34) and to conceal the identity of the perpetrator of the crime of murder (counts 28 and 36). Defendant concedes that his demurrer did not address those counts but asks, nonetheless, that this court reverse his convictions on those counts as well. It follows

We have considered defendant's other assignments of error respecting pretrial matters. None is well taken. We turn to defendant's assignments of error pertaining to the guilt phase of the trial.

## GUILT-PHASE ASSIGNMENTS OF ERROR

Defendant advances nine assignments of error directed at the guilt phase of the trial.

■    Defendant assigns error to the trial court's exclusion of testimony that, in 1990, Susbauer had been the subject of a "high-risk felony stop," in which a police officer ordered Susbauer to lie face down on the ground. Defendant contended that that evidence was relevant to establish that it was Susbauer, not defendant, who was the main perpetrator of the crimes in the Jarvis/Krause attack and in the McGowan Creek murders. That is so, according to defendant, because, in both those criminal episodes, the perpetrator commanded the male victims to lie face down in a prone position. Defendant claimed that the fact that Susbauer had experienced being ordered to lie face down makes it more likely that he was recreating his prior experience of power and powerlessness, and was the perpetrator of both criminal episodes.

The prosecutor objected to the admission of that testimony on the grounds that it was irrelevant and "it's other crimes." The trial court sustained the objection.

The state seems now to concede that the proffered testimony has some "minimal relevance." Instead, in its argument in support of the trial court's ruling, it focuses exclusively on establishing that the testimony amounted to "other crimes" evidence, which is inadmissible under OEC 404(3). OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

from our conclusion with respect to the the counts to which defendant *did* demur that such a result is not warranted.

The state contends that the police officer's testimony amounts to propensity evidence—that is, the state asserts that defendant offered the testimony to show that, because Susbauer once was ordered to the ground, he is more likely to be the person who ordered the male victims to the ground. Indeed, defendant himself has stated that that is the reason that he offered the evidence. However, that reason does not turn the evidence into inadmissible propensity evidence. In fact, it is not evidence that is subject to analysis under OEC 404(3) at all.

OEC 404(3) precludes the admission of evidence of a person's prior "crimes, wrongs or acts" to prove the character of that person to show that he or she later acted in conformity with them. The fact that a police officer once ordered Susbauer to lie face down is not itself a "crime" or a "wrong" or an "act" *of Susbauer's*, and we cannot see how it would tend to prove Susbauer's character in any event. More importantly, defendant did not attempt to establish that Susbauer acted in conformity with *his own prior act* of lying face down. The proffered evidence does not fit within any category of what is known as "other crimes" evidence under OEC 404(3), and that rule does not provide a basis for excluding it.

However, notwithstanding the state's apparent concession as to relevance, we conclude that the proffered evidence is irrelevant and, therefore, was inadmissible. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Defendant claims that evidence of Susbauer's earlier experience during the "high-risk felony stop" tends to make it more probable that he was the perpetrator of Jarvis/Krause attack and the McGowan Creek murders. We do not see the connection. In order to conclude from the fact that Susbauer had been ordered by a police officer to lie face down on one occasion five years earlier that Susbauer was the perpetrator of those crimes, a jury would have to make a series of inferential leaps that lack any factual predicate. For example, the jury would have to infer that people who have had that experience are more likely than those who merely have read about it or seen it on television or in films to realize the intimidating nature

of such an act, or that Susbauer, in particular, was scarred from the experience and wanted to inflict a similar experience on someone else, or even that evidence that might help to explain a person's motivation for acting in a particular way can be used to prove that the person in fact did act in that particular way. None of those inferences is warranted in this case. As a matter of law, the evidence was not relevant. It follows that the trial court did not err in excluding it.

■■ Defendant's next four assignments of error concern the trial court's failure to ensure jury unanimity on many of the charges of aggravated murder.[8] With respect to counts 20, 21, 27, 29, 35, and 37, which are based on the underlying crime of third-degree sexual abuse, defendant contends that the trial court should have identified for the jury the factual circumstances surrounding those crimes, including a particular instance of third-degree sexual abuse involving a particular perpetrator and victim, or that the trial court should have instructed the jury that it must agree unanimously on the same incident of third-degree sexual abuse in order to find defendant guilty of aggravated murder as charged in those counts. Defendant makes identical arguments with respect to those aggravated murder charges that are based on the commission of the crime of murder (counts 26, 28, 34, and 36). He argues there that the trial court erred when it failed to ensure jury unanimity on the factual circumstances underlying those crimes, either by identifying for the jury a particular murder or by instructing the jury that it must agree unanimously on the same murder before convicting him on those charges.

With respect to each of the charges of aggravated murder committed to conceal the crime of third-degree sexual abuse, the trial court instructed the jury generally that, to find defendant guilty, it would have to find that he intentionally caused each victim's death "in an effort to conceal the crime of sexual abuse in the third degree." The court also

---

[8] Defendant does not contend that these assignments of error pertain to counts 19, 25, and 33, which alleged that defendant intentionally caused the deaths of Bendele, Williams, and Finley, respectively, "in the course of the same criminal episode that involved the murder of another victim." Therefore, his convictions on those counts stand, regardless of this court's decision with respect to these assignments of error.

instructed the jury with respect to the elements of the crime of third-degree sexual abuse. Similarly, with respect to those counts charging defendant with aggravated murder committed to conceal the identity of the perpetrator of the crime of third-degree sexual abuse, the court merely told the jurors that, to find defendant guilty, they would have to find that defendant intentionally caused each victim's death "in an effort to conceal the identity of the perpetrator of the crime of sexual abuse in the third degree."

The court did not identify the victim or surrounding circumstances of the underlying crimes of third-degree sexual abuse with respect to any of the aggravated murder charges based on that underlying crime. Nor did the trial court instruct the jury that, to convict defendant of an aggravated murder charge based on third-degree sexual abuse, all jurors had to agree that the murder had been committed to conceal a single incident of sexual abuse, upon which they all agreed, committed against a single victim. Likewise, with regard to the counts alleging concealment of the identity of the perpetrator of the crime of third-degree sexual abuse, the trial court did not tell the jurors that, to return a guilty verdict, they all had to agree on the identity of at least one perpetrator.

On the counts of aggravated murder based on the underlying crime of murder, the court gave similar instructions; it simply told jurors that, to find defendant guilty, they had to agree that he intentionally caused the victim's death "to conceal the commission of the crime of murder" or "to conceal the identity of the perpetrator of the crime of murder." As with the aggravated murder counts based on third-degree sexual abuse, the court did not instruct the jury that, to convict, all jurors had to agree on the same underlying crime of murder or the same perpetrator.

In a combined argument, defendant asserts that evidence at trial could have supported more than one instance of third-degree sexual abuse, by more than one perpetrator, and more than one murder by more than one perpetrator. He argues that, under those circumstances, there was a strong possibility of jury confusion and, therefore, it was incumbent upon the trial court to identify the facts and circumstances of

the crimes of sexual abuse or murder with respect to each count of aggravated murder, and to instruct the jurors that, in addition to everything else that is required, they must agree unanimously on the underlying crime to convict defendant on a particular count of aggravated murder based on that crime.

Defendant concedes that he did not object at trial to the instructions on the aggravated murder counts in any of the foregoing respects. However, he contends that this court held in *Lotches* that specificity with respect to the facts and circumstances of the crimes underlying each aggravated murder charge is required to meet the constitutional jury unanimity requirements. Further, he argues that the error is one of law and is not reasonably in dispute. Accordingly, defendant urges this court to exercise its discretion to review the error as apparent on the face of the record.

In *Lotches*, this court addressed a similar problem. As discussed above, the defendant in *Lotches* was charged with three counts of aggravated murder for killing one individual. One count alleged that the defendant intentionally murdered the victim "in the course of and in the furtherance of and in the immediate flight from" the crime of first-degree robbery. A second count alleged that the murder was committed in connection with the crime of attempted kidnapping. A third count alleged that defendant committed the murder to conceal the identity of the perpetrator of attempted murder. Defendant was not charged with the first-degree robbery that the state later claimed was the basis of the aggravated murder charge, but he was indicted on and convicted of a charge of first-degree robbery involving a different victim. Defendant was not charged with attempted kidnapping at all, but he was charged with two counts of attempted murder, involving two different victims. The trial court did not identify for the jury the victim or attendant circumstances of any of the underlying felonies, nor did it instruct the jurors that all had to agree on the same set of underlying facts in order to convict the defendant on each count. In that case, as in the present, the defendant did not object to the instructions as given.

The court in *Lotches* began by examining whether the instructions given to the jury were adequate. The court observed that, in *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), this court overturned the aggravated murder conviction of a defendant who had been charged with that crime based on two separate aggravating factors, because the trial court had instructed the jury that it was not required to agree unanimously on any particular theory, so long as some combination of the 12 jurors agreed that one or the other or both of the alleged aggravating factors had been proved. In *Lotches*, the court stated that, under *Boots*, the unanimous jury rule "requires that the jury agree as to just what defendant did to bring himself within the purview of the particular subsection of the aggravated murder statute under which he was charged." *Lotches*, 331 Or at 468-69 (internal quotation marks omitted). Applying that rationale to the aggravated murder charges at issue in *Lotches*, the court held that, "because the aggravated murder instructions that were given did not either limit the jury's consideration to a specified underlying felony or require jury unanimity concerning a choice among alternative felonies, each instruction carried the danger that this court had condemned in *Boots*." *Lotches*, 331 Or at 469. Accordingly, the court concluded that, "[a]s a legal matter, the jury instructions were erroneous." *Id.*

In the present case, defendant was not charged with third-degree sexual abuse, but there was evidence to support a finding that either defendant or Susbauer (or both) committed that crime under several different theories. Similarly, there were three murder victims and two possible perpetrators of that crime. We agree with defendant that, because the instructions that the jury was given with respect to each of the aggravated murder counts based on the crimes of third-degree sexual abuse and murder did not either limit the jury's consideration to a specific instance of third-degree sexual abuse or murder, committed by a particular perpetrator against a particular victim, or require jury unanimity concerning a choice among alternative scenarios, each instruction carried an impermissible danger of jury confusion as to the crime underlying each count. As in *Lotches*, the jury instructions with respect to counts 20, 21, 26, 27, 28, 29, 34, 35, 36, and 37, were erroneous.

We turn to consider the state's argument that any errors in the jury instructions were harmless. In that regard, we examine whether it is possible at this stage of the proceeding to determine whether all 12 of the jurors agreed on the victim, perpetrator, and attendant circumstances of the crimes underlying the aggravated murder charges. *Id.* at 470-71.

The state contends that the jury's unanimous verdicts on other counts demonstrate the required degree of unanimity so as to render each of the jury instruction errors harmless. We agree with the state that the trial court's errors with respect to counts 26, 28, 34, and 36, in failing to identify the victim and perpetrator of the underlying crimes of murder, were harmless. That is so because the jury unanimously convicted defendant of aggravated murder on counts 19, 25, and 33. As to those counts, the trial court instructed the jury as follows:

> "In this case, to establish the crime of aggravated murder, in Count 19, the State must prove beyond a reasonable doubt that * * * [defendant] intentionally caused the death of Kristal Rene Bendele, another human being, and Brandon Matthew Williams and Patrick Finley, other human beings, in the same criminal episode.
>
> "* * * * *
>
> "In this case, to establish the crime of aggravated murder, in Count 25, the State must prove beyond a reasonable doubt the following elements: * * * that [defendant] intentionally caused the death of Brandon Matthew Williams, another human being, and Kristal Rene Bendele and Patrick Finley, other human beings, in the same criminal episode.
>
> "* * * * *
>
> "In order to establish the crime of aggravated murder, in Count 33, the State must prove beyond a reasonable doubt that * * * [defendant] intentionally caused the death of Patrick Finley, another human being, and Kristal Rene Bendele and Brandon Matthew Williams, other human beings, in the same criminal episode."

Pursuant to those instructions, the jury was required to find that *defendant* intentionally caused the death of each of the

victims *and both* of the other victims in the same criminal episode. Thus, the fact that the jury unanimously convicted defendant on those counts proves that all 12 jurors believed that *defendant* was responsible for *all three murders*. The fact that Susbauer may have shared responsibility for those murders does not alter that analysis. The verdicts on counts 19, 25, and 33 establish that the jury could not have been confused with respect to either the victims or the perpetrator of the crime of murder in those counts that alleged that defendant committed murder to conceal the crime of murder and to conceal the identity of the perpetrator of the crime of murder (counts 26, 28, 34, and 36).

The same cannot be said for those aggravated murder counts alleging the predicate crime of third-degree sexual abuse (counts 20, 21, 27, 29, 35, and 37), however. As noted, defendant was not charged with that predicate crime, but the state presented evidence at trial that would have supported various theories making defendant liable for committing it. Under some of those theories, defendant was the perpetrator; under others, Susbauer was. Bendele, Williams, and Susbauer himself were possible victims. In addition, defendant was charged with, and convicted of, first-degree sodomy for his conduct with respect to Bendele.

With respect to each count of aggravated murder predicated on the crime of third-degree sexual abuse, the jury was required to agree unanimously on all material facts constituting that underlying crime. However, in the absence of explicit jury instructions, it is impossible to determine whether, in convicting defendant of a particular count of aggravated murder based on concealing the commission or the identity of the perpetrator of the crime of third-degree sexual abuse, each individual juror in fact had in mind the same victim, perpetrator, and surrounding circumstances making up that crime. It follows that the errors in the jury instructions with respect to counts 20, 21, 27, 29, 35, and 37 were not harmless.

In *Lotches*, this court held that a trial court's failure to instruct the jury fully respecting the counts of aggravated murder predicated on an underlying felony was error apparent on the face of the record. *Id.* at 472. The court stated that

each of the prerequisites for such a determination was present: the issue of what must be included in jury instructions is a question of law; what was or was not included in the instructions actually given is easily ascertainable through examination of the record; and, in light of this court's previous holding in *Boots*, the error was obvious. Therefore, the court in *Lotches* reversed the defendant's convictions of aggravated murder for the two counts for which the court concluded that the error was not harmless. *Id.* The same reasoning is applicable here. Accordingly, notwithstanding the defendant's failure to object to the instructions at trial, we conclude that defendant's convictions of aggravated murder on counts 20, 21, 27, 29, 35, and 37 must be reversed, and the case remanded to the trial court for further proceedings respecting those counts.

Our conclusion with respect to those counts does not affect defendant's seven remaining convictions of aggravated murder, however. Accordingly, we have considered the balance of defendant's assignments of error respecting the guilt phase. We find none to be well taken and, therefore, we affirm defendant's seven remaining aggravated murder convictions. We turn to consider defendant's assignments of error relating to the penalty phase of his trial.

## PENALTY-PHASE ASSIGNMENTS OF ERROR

Defendant makes many assignments respecting the evidence offered, the jury instructions given, and the law applied during the penalty phase. We have considered each and determine that all but one either is not preserved, is not well taken, or has been answered by previous decisions of this court or by the United States Supreme Court. Discussion of those assignments of error would not benefit defendant, the public, the bench, or the bar. We turn to the one assignment of error that appears to be well taken.

■ Defendant contends that the trial court erred when it entered multiple judgments and sentences of death for the aggravated murder of Bendele, when it entered multiple judgments and sentences of death for the aggravated murder of Williams, and when it entered multiple judgments and

sentences of death for the aggravated murder of Finley.[9] Defendant asserts that, under this court's decision in *State v. Barrett*, 331 Or 27, 10 P3d 901 (2000), a defendant properly may be charged with multiple counts of aggravated murder based on the existence of multiple aggravating factors, *id.* at 31, but, in the event of conviction on those charges, only one judgment should be entered for each murdered person, which judgment would enumerate each of the separate aggravating factors, *id.* at 37. Defendant acknowledges that he did not object to the imposition of multiple judgments and multiple sentences of death, but argues that this court should review the error as apparent on the face of the record.

The state concedes that the judgment entered is erroneous, and we agree. We remand the case for entry of corrected judgments of conviction reflecting defendant's guilt on the charges of aggravated murder with respect to each victim.[10] Each judgment should enumerate separately the aggravating factors on which each conviction was based. Further, each judgment entering a single conviction for aggravated murder for each victim should impose a single sentence of death.

We have considered all defendant's assignments of error and every argument made in support thereof. Any assignment of error or argument not discussed in this opinion either has been discussed by this court in previous cases and resolved against defendant, was not preserved for review, or is not well taken. Further discussion of the issues would not benefit defendant, the public, the bench, or the bar.

---

[9] As noted above, the jury found defendant guilty of 13 counts of aggravated murder (several counts for each victim), and the court imposed 13 sentences of death. As discussed *ante*, we conclude that the trial court committed reversible error with respect to six of those counts. The discussion in the text pertains to the remaining seven convictions for aggravated murder and the seven sentences of death.

[10] In light of our holding of reversible error with respect to those aggravated murder counts based on the underlying crime of third-degree sexual abuse, only one aggravated murder count remains based on the murder of Bendele and entry of a corrected judgment is unnecessary. However, the remaining convictions based on the murder of Williams, counts 25, 26, and 28, should be merged into a single conviction, as should the remaining convictions based on the murder of Finley, counts 33, 34, and 36. The court should then reimpose the death sentence on each of those convictions.

The judgments of conviction for aggravated murder on counts 20, 21, 27, 29, 35, and 37 are reversed, and the sentences of death thereon are vacated. The judgments of conviction for aggravated murder on counts 19, 25, 26, 28, 33, 34, and 36, and the sentences of death thereon, are affirmed. The case is remanded to the circuit court for further proceedings.