674

Submitted on record and briefs September 29, 2006, affirmed April 4, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM HOWARD PAULEY,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0300333; A125151

156 P3d 128

Peter Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Elizabeth A. Gordon, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction for attempted sexual abuse in the first degree. ORS 163.427. He argues that, under *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993), the trial court erred in failing to instruct the jury that 10 or more jurors must concur on the factual instance of attempted sexual contact underlying that charge. Defendant concedes that he failed to preserve that claim of error, but asks us to review it as plain error. We affirm.

In August 2002, the 15-year-old victim accepted a car ride from defendant, whom she had met on a few previous occasions. The victim accompanied defendant on a few errands and then asked defendant to take her to a friend's house. Instead, defendant pulled into a wooded area and parked the car. He ordered the victim out of the car and down a slight embankment. A struggle ensued and defendant tried to put his hand down the victim's pants, touched her breasts, and tried to force her to perform oral sex on him. While defendant went to investigate the sound of an approaching vehicle, the victim fled and hid for several hours until defendant eventually left the area. Later, the victim ran to the nearest house and called the police.

The indictment charged defendant with kidnapping in the second degree (Count 1), ORS 163.225, attempted rape in the first degree (Count 2), ORS 163.375, attempted sexual abuse in the first degree (Count 3), ORS 163.427, and delivery of a controlled substance to a minor (Count 4), *former* ORS 475.995 (2003), *renumbered as* ORS 475.906 (2005). Specifically, Count 3 of the indictment alleged that defendant committed attempted sexual abuse in the first degree:

> "[D]efendant on or about the 8th day of August, 2002, in the County of Clackamas, State of Oregon, by means of forcible compulsion, did unlawfully and intentionally attempt to subject [the victim], to sexual contact *by attempting to touch her vagina*, a sexual or intimate part of [the victim.]"

(Emphasis added.)

Although the indictment specifically described the incident of attempted sexual contact underlying Count 3, the record does not indicate that the trial court read the indictment to the jury. However, in his opening statement, the prosecutor explained to the jury that defendant "intentionally attempted through forcible compulsion to try to *touch the vagina of the victim* * * *." (Emphasis added.) After the state rested its case, defendant moved for a judgment of acquittal. In responding to that motion, the prosecutor explained to the court, outside the presence of the jury, that Count 3 related to the attempted touching of the victim's vagina. Again, in his closing argument, the prosecutor explained that defendant "attempted to *touch the vagina of the victim* * * *." (Emphasis added.)

The court instructed the jury, in part, as follows:

"This being a criminal case, ten jurors or more must agree on each of your verdicts. When you have arrived at a verdict, the presiding juror will check the appropriate line. When you've reached a verdict on all three counts, the presiding juror will sign the appropriate verdict form. You'll have with you in the jury room a verdict form which has the caption of the case on it[.]

"[A]s to Count 3, again you'll have a line for either *not guilty* or *guilty* of the crime of Attempted Sexual Abuse in the First Degree as alleged in Count 3 of the indictment. Again, when the appropriate number of jurors have reached your verdict, the presiding juror should check the appropriate line."

(Emphasis in original.)

As to the material elements of Count 3, the court instructed the jury:

"[T]o establish the crime of Attempted Sexual Abuse in the First Degree, the State must prove beyond a reasonable doubt the following four elements: (1) that the act occurred in Clackamas County, Oregon; (2) that the act occurred on or about August the 8th, 2002; (3) that William Howard Pauley intentionally attempted to subject [the victim] to *sexual contact*; and (4) that [the victim] was subjected to forcible compulsion by the actor."

(Emphasis added.)

Defendant did not object to the jury instructions, nor did he request a concurrence instruction on the facts constituting sexual contact. The court gave the jury a verdict form that required the jury to find defendant either guilty or not guilty of attempted sexual abuse in the first degree, "*as alleged* in Count 3 of the Indictment." (Emphasis added.) The jury found defendant guilty of attempted sexual abuse in the first degree and kidnapping in the second degree.[1]

■      On appeal, defendant argues that the court erred in failing to instruct the jury that 10 or more jurors must agree that he attempted to touch the victim's vagina to convict him of attempted sexual abuse in the first degree. He asserts that the court's failure to provide such an instruction made it possible for the jury to convict him without the requisite agreement of 10 jurors, because the evidence adduced at trial described three instances of attempted sexual contact; specifically, that he tried to touch the victim's vagina, he touched her breasts, and he tried to force her to perform oral sex on him. *See* Or Const, Art I, § 11;[2] ORS 136.450(1).[3] For example, he argues that "three jurors may have thought [that he] attempted to touch [the victim's] vagina, three jurors may have thought [that he] attempted to make [the victim] touch his penis, and four jurors may have thought that [he] attempted to touch [the victim's] breasts." Defendant concedes that he failed to preserve his claim of error, but urges us to review it as plain error.

The state contends that the trial court did not err. According to the state, the jury shared the "same general vision of the facts essential to the crime charged" because the state properly elected the conduct underlying the charge and

---

[1] Defendant does not appeal his conviction for kidnapping in the second degree. The jury acquitted him of attempted rape in the first degree, as alleged in Count 2. Count 4, delivery of a controlled substance to a minor, was dismissed prior to trial.

[2] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *[.] [I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty[.]"

[3] ORS 136.450(1) provides:

"Except as otherwise provided in subsection (2) of this section, the verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors."

referred to that conduct in its opening statement and closing argument, in its statement to the court in response to defendant's motion for judgment of acquittal, and, indirectly, in the verdict form.[4] Further, the state contends that defendant's claim does not constitute plain error and that we, therefore, should decline to review it.

■ As noted, Article I, section 11, of the Oregon Constitution provides that, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury * * *[.] [I]n the circuit court ten members of the jury may render a verdict of guilty or not guilty[.]" *See also* ORS 136.450(1) (requiring the concurrence of at least 10 of 12 jurors in criminal matters). The jury concurrence requirement also requires that the requisite number of jurors agree on the factual occurrences that constitute a crime. *Boots*, 308 Or at 378-79. A court's failure to give a jury instruction requiring "agreement on all *material elements* of a charge in order to convict" is error. *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) (emphasis added).

In *Boots*, the defendant was charged with aggravated murder based on two different theories: (1) that the defendant committed the homicide in the course of committing robbery in the first degree and (2) that the defendant committed the homicide to conceal the identity of the perpetrators of the robbery. 308 Or at 374. The trial court affirmatively instructed the jury that it was not necessary for them to agree on the theory of aggravated murder. The Supreme Court concluded that the trial court erred in instructing the jury that concurrence was not required, stating, " '[t]he [jury]

---

[4] In some circumstances, such as when the state makes an election as to the conduct underlying a particular charge, jury concurrence can be ensured without an express concurrence instruction. To be effective, an election must be confirmed to the jury by the court. *Compare State v. Bauer*, 183 Or 481, 482-83, 193 P2d 999 (1948) (concluding that the trial court erred in failing to instruct the jury regarding the state's election in its indictment), *with State v. Randolph*, 123 Or App 566, 568, 860 P2d 873 (1993), *rev den*, 318 Or 382 (1994) (the state's election of conduct that occurred on a particular date was sufficient to ensure jury concurrence, because the trial court instructed the jury regarding the election). Here, the state's election was not sufficient to ensure jury concurrence on the discrete act of attempted sexual contact, because it was not confirmed *by the court*. The indictment did identify the discrete act of attempted sexual contact underlying Count 3, but there is no evidence that the court read it to the jury.

unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged.'" *Id.* at 380 (quoting *United States v. Gipson,* 553 F2d 453, 457-58 (5th Cir 1977)). The *Boots* court distinguished between facts that require jury concurrence and those that do not:

> "We are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand. We deal with facts that the law (*or the indictment*) has made essential to a crime."

*Id.* at 379 (emphasis added).

■ The test, then, for whether a *Boots* instruction is required is whether the law or the indictment has made the fact at issue "essential to the crime charged." If so, the jury must be instructed concerning the necessity of concurrence on those essential elements of the charge in order to convict the defendant. *See Lotches,* 331 Or at 472.

We briefly discuss the cases that have considered the trial court's failure to provide a *Boots* instruction in the context of unpreserved claims of error.

In *Lotches,* the court held that the failure to give a *Boots* instruction on the felonies underlying aggravated murder charges was plain error. The defendant in *Lotches* was charged with three counts of aggravated murder based on three different underlying felonies. 331 Or at 461. The evidence presented at the defendant's trial could have supported more than one charge of each underlying felony, because there was more than one victim involved in each of those felonies. The court held that the identities of the victims in the underlying felonies were "essential to the crime charged" and that, therefore, the trial court's jury instructions were plainly erroneous because they did not "either limit the jury's consideration to a specified underlying felony or require jury unanimity concerning a choice among alternative [underlying] felonies[.]" *Id.* at 469.

Similarly, in *State v. Hale,* 335 Or 612, 75 P3d 448 (2003), *cert den,* 541 US 942 (2004), the court concluded that the failure to give a *Boots* instruction was plain error. The

defendant in *Hale* was charged with six counts of aggravated murder based on the underlying crime of sexual abuse in the third degree and four counts based on the underlying crime of murder. *Id.* at 617-18. Again, the court held that the trial court's jury instructions were plainly erroneous because they did not "either limit the jury's consideration to a specific instance of third-degree sexual abuse or murder, committed by a particular perpetrator against a particular victim, or require jury unanimity concerning a choice among alternative scenarios[.]" *Id.* at 627. Because those facts were essential to the crimes, "each instruction carried an impermissible danger of jury confusion as to the crime underlying each count." *Id.*

In *State v. Sparks*, 336 Or 298, 83 P3d 304, *cert den*, 543 US 893 (2004), the court concluded that the trial court's failure to give a *Boots* instruction regarding facts that were not obviously "essential to the crime" was not plain error. In *Sparks*, the defendant was convicted of aggravated murder based on five underlying felonies. *Id.* at 313. He argued that the court's failure to give a *Boots* instruction was plain error, because the evidence supported more than one instance of each of the underlying felonies. Specifically, he argued that "each crime could have occurred at either, or both, of two distinct locations—defendant's bedroom, where he first brought the victim, or the railroad embankment, where police found the victim's body." *Id.*

The *Sparks* court distinguished *Lotches* and *Hale* and concluded that the trial court's failure to give a *Boots* instruction was not plain error. *Id.* at 316. The facts of *Sparks* were distinguishable because, in *Sparks*, there was only one victim and one perpetrator, whereas, in *Lotches*, multiple victims were involved and, in *Hale,* multiple victims and multiple perpetrators were involved. The Supreme Court concluded that "[i]t is not reasonably in dispute that a jury's failure to agree unanimously on either *the victim* or *the perpetrator* of the crime would violate the jury unanimity rule, because both those facts are material elements of the underlying crimes." *Id.* (emphasis in original). However, it was not "obvious" that the jury's failure to agree on the location where the defendant may have perpetrated the crimes against a single victim would violate the jury unanimity rule. *Id.* at

317. The court explained that "[n]othing about the crimes charged in [*Sparks*] demonstrates that the precise location of the underlying crimes constitutes a *material element* * * * on which the jury must agree[.]" *Id.* (emphasis added). "The line between those facts that are essential to the crime" and thus require jury unanimity, and "those that are merely factual details may not always be clear." *Id.* Because it was not clear whether the location of the underlying felonies was a fact essential to the crime or a mere factual detail, the trial court's failure to give a *Boots* instruction was not plainly erroneous. *Id.*

In *State v. Rodriguez-Castillo*, 210 Or App 479, 151 P3d 931 (2007), this court held that the failure to give a *Boots* instruction was not plain error. In *Rodriguez-Castillo*, the defendant argued that the court erred in failing to give a *Boots* instruction regarding the facts that constitute sexual abuse in the first degree. *Id.* at 496. He argued that there was evidence that he sexually abused the victim, by touching her vagina, on three different occasions and that a *Boots* instruction was necessary to ensure that the jurors agreed on the same instance of sexual abuse. We held that the court's failure to give a *Boots* instruction in that case was not plain error, because "[i]t is not obvious that the facts on which the jurors might have disagreed are material elements of the crime, as opposed to 'factual details' on which the jury is not required to agree." *Id.* at 498.

■　　We turn to whether the trial court plainly erred in failing to give a jury concurrence instruction here. ORAP 5.45(1) governs this court's discretion to review unpreserved claims of error; it provides, in part:

"No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief * * *, provided that the appellate court may consider an error of law apparent on the face of the record."

If a claim of error is unpreserved, "appellate courts nonetheless possess discretion to consider it if it is plain error, also known as error apparent on the face of the record." *State v. Reyes-Camarena*, 330 Or 431, 435, 7 P3d 522 (2000) (internal quotation marks omitted).

■ The elements of plain error are (1) the error is one of law, (2) the error is apparent, meaning the legal point is obvious, not reasonably in dispute, and (3) the error appears on the face of the record; that is, the court "need not go outside the record or choose between competing inferences to find it[.]" *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). If the claimed error satisfies those requirements, then the court "must exercise its discretion to consider or not to consider the error" and "articulate its reasons for doing so." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). The Supreme Court emphasized that this court should exercise its discretion to review unpreserved claims with "utmost caution" because the efficiency of appellate review is facilitated by the preservation requirement. *Id.*

In this case, the first and third elements of plain error are satisfied. "[T]he question of what must be included in a jury instruction is a question of law, and what was or was not included is determined readily by examining the instructions that were given." *Lotches*, 331 Or at 472. Accordingly, the only remaining issue is whether the error, if any, was "apparent"; that is, was the legal point "obvious, not reasonably in dispute." *Brown*, 310 Or at 355. For the following reasons, we conclude that the legal point raised was not obvious.

First, it is not apparent that the danger of nonconcurrence that the court addressed in *Boots* exists in this case. The concern in *Boots* was that the jury could fail to concur on the essential facts that constitute material elements of the crime charged. 308 Or at 378-79. Specifically, the court was concerned that, because the state presented two alternative theories of aggravated murder, there was a "possibility that * * * a jury could agree on guilty by agreeing that *some* one or another of a number of aggravating factors was proved *without* agreeing that any *particular* aggravating factor was proved." *State v. King*, 316 Or 437, 442, 852 P2d 190 (1993) (discussing concern addressed by *Boots*) (emphasis in original). It is not obvious that that same danger existed in this case, because here defendant was charged with only one count of attempted sexual abuse in the first degree and the state did not rely on any alternative theories to establish that charge.

As a result, this case is unlike *Lotches*, *Hale*, *Sparks*, and *Rodriguez-Castillo*. In those cases, the defendants were charged with multiple counts of a crime based on different factual incidents. In cases where a defendant is charged with multiple counts based on different incidents there is a greater possibility of jury confusion with respect to the evidence that relates to each charge. *See State v. Pervish*, 202 Or App 442, 462, 123 P3d 285 (2005), *rev den*, 340 Or 308 (2006) ("The risk of [jury] confusion in reaching such concurrence applies equally to any crime that is pleaded in *multiple counts* where a jury is inadequately instructed as to which factual theories and evidence apply to which counts." (emphasis added)). *See also Boots*, 308 Or at 377 (suggesting that there would not be a risk of nonconcurrence if the defendant was charged with only one theory of aggravated murder). In contrast, in this case, defendant was charged with only one count of attempted sexual abuse in the first degree and the state did not rely on alternative theories to establish the material elements of that offense. Under those circumstances, it is not obvious that there was a risk of jury nonconcurrence.

■     Second, it is not apparent that the trial court committed reversible error in failing to give a *Boots* instruction in this case. The failure to give a necessary jury concurrence instruction may be rendered harmless if other circumstances indicate that the jury achieved the necessary concurrence. *See Lotches*, 331 Or at 469 (discussing the possibility that the erroneous jury instructions were harmless); *State v. Rose*, 311 Or 274, 287, 810 P2d 839 (1991) (erroneous jury instruction was harmless because the verdict indicated that the jury achieved the requisite concurrence); *State v. Randant*, 196 Or App 601, 605-06, 103 P3d 1134 (2004) (failure to give a *Boots* instruction was error, but harmless based on jury verdict on other charges); *Randolph*, 123 Or App at 570 (failure to give jury concurrence instruction was not erroneous where state properly elected the date of certain crimes and when the court's grant of defendant's motion for judgment of acquittal had the effect of "forcing an election").

Here, several factors indicate that the jury concurred on the incident of attempted sexual contact: (1) defendant was charged with only one count of attempted sexual

abuse in the first degree; (2) the court instructed the jury generally that at least 10 jurors must agree on each of its verdicts; (3) the court instructed the jurors that, to find defendant guilty of Count 3, they must find that he attempted to sexually contact the victim and that he subjected the victim to forcible compulsion; (4) the court also gave the jury a verdict form that separated the charges against defendant to ensure that the jurors considered each charge separately.

In addition to those instructions, the prosecutor indicated in his opening statement and closing argument that he was specifically relying on the incident where defendant attempted to touch the victim's vagina to establish the "sexual contact" required in Count 3.

We briefly discuss cases in which the Supreme Court has addressed the impact of a prosecutor's statements on inadequate jury instructions. In *Brown*, the Supreme Court concluded that "neither the sufficiency of the evidence nor the completeness of counsel's arguments concerning that evidence is a substitute for the sufficiency of the [jury] instructions." 310 Or at 356. The defendant in *Brown* was convicted of aggravated murder of a witness pursuant to ORS 163.095(2)(a)(E). A conviction under that statute requires proof of two independent requirements: (1) the victim fit into one of the categories designated by the statute, and (2) the murder was "related to the performance of the victim's official duties in the justice system." 310 Or at 353. The second element requires the state to prove "a causal connection between the murder and the victim's status as a witness." *Id.* (internal quotation marks omitted). The court failed to instruct the jury regarding the second element of the offense; the instruction provided, in relevant part, that the jury needed to concur that, "the Defendant intentionally caused the death of [the victim]; [and] that [the victim] was to be a witness in a criminal proceeding." *Id.* at 354. The court rejected the state's argument that any error in the instruction was harmless because "the evidence and the arguments of counsel to the jury emphasized the causal link between defendant's knowledge that [the victim] was to be a witness against him and his decision to kill her." *Id.* at 356.

Based on the holding in *Brown*, the court in *Lotches* concluded that the failure to give a *Boots* instruction was not harmless. 331 Or at 469. The jury instructions in *Lotches* were inadequate because they did not identify the victim of the alleged underlying felony with respect to the multiple counts of aggravated murder. The state argued that any error in the instructions was harmless because the prosecutor in his closing argument clarified which victims of the underlying felonies related to each aggravated murder count. In rejecting the state's contention, the court concluded that it is the trial court's function to instruct the jury on the law, and the "prosecutor's arguments were not a legally sufficient substitute for necessary jury instructions." *Id.*

This case is unlike *Brown* and *Lotches*. In those cases, the trial court failed to instruct the jury on a material element of the crime. Because it is the court's duty to instruct the jury *on the law*, the prosecutor's statements in *Brown* and *Lotches* could not substitute for the necessary jury instructions.

In contrast, in this case the trial court did instruct the jury *on the law* related to Count 3; it stated:

"[T]o establish the crime of Attempted Sexual Abuse in the First Degree, the State must prove beyond a reasonable doubt the following four elements: (1) that the act occurred in Clackamas County, Oregon; (2) that the act occurred on or about August the 8th, 2002; (3) that William Howard Pauley intentionally attempted to subject [the victim] to *sexual contact*; and (4) that [the victim] was subjected to forcible compulsion by the actor."

(Emphasis added.)

Here, the prosecutor's statements are not statements that instructed the jury on the law; that is, the statements did not relate to the jury the legal principles that it was to apply to the facts of the case. Rather, the prosecutor's statements in the opening statement and closing argument pertain to the factual allegation substantiating "sexual contact," a material element of the crime of attempted sexual abuse in the first degree. The prosecutor's statements explained to the jury the evidence that the state relied on to prove the material element of "sexual contact," specifically,

that defendant attempted to touch the victim's vagina. The prosecutor's statements did not substitute for the necessary jury instruction. However, the instructions that the trial court gave to the jury coupled with the prosecutor's statements, describing the factual incident that it relied on to establish Count 3, make any error in failing to give a *Boots* instruction not obvious. Based on those circumstances, it is not apparent that the jury failed to concur on the discrete act of sexual contact despite the trial court's failure to give a *Boots* instruction.

For the foregoing reasons we conclude that the necessity for a *Boots* instruction in this case was not obvious and therefore does not constitute plain error.

Affirmed.