Argued and submitted March 29, Roseburg High School, Roseburg, convictions on Counts 33 and 35 reversed and remanded; conviction on Count 31 reversed; remaining sentences vacated; remanded for resentencing; otherwise affirmed November 9, 2005, petition for review denied March 21, 2006 (340 Or 308)

## STATE OF OREGON,
*Respondent,*

*v.*

## BENJAMIN EDWARD PERVISH,
*Appellant.*

### 010130419; A116848

123 P3d 285

Jesse Wm. Barton argued the cause and filed the briefs for appellant.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Millikan, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his multiple convictions for promoting prostitution, ORS 167.012, compelling prostitution, ORS 167.017, and witness tampering, ORS 162.285.[1] In six assignments of error, defendant asserts that (1) the trial court erred in failing to properly instruct the jury on each charge that 10 or more of its members must agree on a specific factual incident involving a particular victim; (2) the court erred in admitting uncharged misconduct evidence with respect to each of the charged offenses; (3) the court erred in denying his motion for a judgment of acquittal with respect to the witness tampering charge; (4) the court erred in calculating the length of defendant's post-prison supervision terms on his convictions for compelling prostitution;[2] (5) the court committed plain error under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), by entering convictions for multiple crimes committed against the same victim; and

---

[1] ORS 167.012 provides, in part:

"(1) A person commits the crime of promoting prostitution if, with intent to promote prostitution, the person knowingly:

"* * * * *

"(b) Induces or causes a person to engage in prostitution or to remain in a place of prostitution; or

"(c) Receives or agrees to receive money or other property, other than as a prostitute being compensated for personally rendered prostitution services, pursuant to an agreement or understanding that the money or other property is derived from a prostitution activity[.]"

ORS 167.017 provides, in part:

"(1) A person commits the crime of compelling prostitution if the person knowingly:

"(a) Uses force or intimidation to compel another to engage in prostitution[.]"

ORS 162.285 provides, in part:

"(1) A person commits the crime of tampering with a witness if:

"* * * * *

"(b) The person knowingly induces or attempts to induce a witness to be absent from an official proceeding to which the person has been legally summoned."

[2] The state concedes that the challenged post-prison supervision terms are erroneous.

(6) the court committed plain error under *Blakely* and *Apprendi* by imposing consecutive sentences for crimes involving the same victim.

The case was tried to a jury. In view of the nature of defendant's assignments of error, we state the facts in the light most favorable to the state. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). The charges against defendant involved three women who worked for defendant as prostitutes: Kelly, McAllister, and Walford. All three women voluntarily went to work for defendant. However, each of the women was afraid of defendant. Defendant told the women that he had a previous conviction for manslaughter; defendant described the homicide as something he had gotten away with. The women were afraid that defendant might hurt them and, in McAllister's case, hurt her child. Officer Kosloske testified that pimps often make threats against their prostitutes' children to secure the women's cooperation.

On separate occasions, defendant nearly drowned Kelly and Walford in cold water-filled bathtubs because they did not make enough money. Defendant choked McAllister for the same reason, and he threatened to harm her if she left him. Defendant also assaulted the women for other reasons. On one occasion, he choked Kelly because he believed that she had broken his rule against having contact with certain men. On another occasion, defendant placed a pistol in Kelly's mouth and threatened to fire it. In addition, he threatened to burn, or did burn, Walford's mouth with a cigarette and threatened to kill her because he believed that she intended to report him to the authorities. Yet another time, defendant got into a wrestling-type fight with Walford because of her "attitude" in not giving him her money. During that episode, defendant caused his dog to become agitated and bite Walford on the leg.

The three women testified to engaging in numerous acts of prostitution for defendant over various lengths of time and involving many customers. The evidence identified nine specific customers who had paid McAllister for sex: (1) Nguyen, a manicurist who paid her $40 for sex; (2) a man known as "Chicken" who paid her $25 for sex; (3) a man named Gray who was in town for business and paid her $200

for sex; (4) a man whom McAllister met at a bar called "The Table"; (5) an older man with a "beer belly" and receding hair who did not speak English well; (6) a tall, skinny man; (7) a man in Beaverton whose wallet McAllister stole; (8) a man named Guzman from Hood River; and (9) a man named Morales-Zapateco who paid McAllister $25 for sex. The evidence showed that defendant encouraged McAllister's prostitution activities with her customers, and McAllister testified that she always delivered the money she received from prostitution activities to defendant.

Walford testified that defendant provided a place for her to live in his house and that she regularly engaged in prostitution while living there. Every night Walford turned her prostitution earnings over to defendant. Walford gave defendant most of the money she earned, and he took care of her needs. Walford had so many customers that she could not distinctly remember any of them.

The evidence also showed that defendant induced Kelly to engage in prostitution, that she did engage in prostitution on numerous occasions, and that she consistently gave defendant the money she made from that activity. Although Kelly testified that she had many customers while working for defendant, the evidence identified five customers in particular: Nguyen on 20 to 25 occasions, a man named Pedro approximately 30 times, Morales-Zapateco about six times, the man whom McAllister identified as "Chicken," and an elderly man. There also was evidence that, on January 4 and January 11, 2001, defendant made telephone calls to Kelly in which he sought to induce her not to testify against him regarding the prostitution charges. Kelly was not, however, subpoenaed to attend any court hearing until January 17, 2001.

Because of the nature of defendant's arguments on appeal, we summarize in detail the procedural history of the case. Defendant was charged by a 40-count indictment. Counts 1 through 9, 33, and 35 charged him with promoting prostitution but did not identify the prostitute involved. Counts 11 through 19 charged defendant with promoting prostitution and identified McAllister as the victim. Count 32, also for promoting prostitution, identified Walford as the

victim. Count 34, charging promoting prostitution, identified Kelly as the victim. Counts 21 through 29, charging defendant with compelling prostitution, identified McAllister as the victim. Counts 36, 38, and 39—for compelling prostitution—identified Kelly as the victim. Counts 37 and 40, also charging defendant with compelling prostitution, named Walford as the victim. Count 31—tampering with a witness—specified Kelly as the victim. Counts 1 through 30 alleged that defendant committed the charged crimes on or between December 8 and December 15, 2000. Count 31 alleged a crime committed on or between January 1 and January 19, 2001. Counts 32, 33, 37, and 40 alleged crimes committed on or between February 1 and June 1, 2000. Finally, Counts 34, 35, 36, 38, and 39 alleged crimes occurring on or between March 1, 1999 and December 15, 2000.

At trial, the court granted defendant's motion for a judgment of acquittal on two counts of promoting prostitution, Counts 10 and 20, and one count of compelling prostitution, Count 30. In its general instructions, the trial court told the jury:

"This being a criminal case tried to a twelve-person jury, ten or more of your number must agree upon your verdict as to each separate charge. When you have arrived at your verdict, the presiding juror will complete and sign the verdict form."

The court later explained the elements of each of the crimes with which defendant was charged. Near the end of its instructions, the court asked if the jurors had any questions. The following colloquy then occurred between the court and a juror:

"JUROR: Each count is each person that they allegedly has sex with; is that correct? I'm not understanding. The same counts, like 1 through 17, are the same verbiage, but why?

"THE COURT: Okay. When we are talking about the person involved, count 1 through count 9, count 11 through 19, and count 21 through 29 all involve acts involving [McAllister]. The State has alleged two different theories of promoting prostitution in count 1 through 9, and then count 11 through 19.

"JUROR: But I'm saying, 1 through 9 is the same verbiage. Why the same verbiage on each count 1 through 9?

"THE COURT: Because they're charged under the statute, under the same—the theories and elements are the same when we actually go through what has to be proven beyond a reasonable doubt. So that's why we're using, as you termed it, the same verbiage but, of course, the verbiage is very important because the count has the elements that must be proven in order to convict on that particular count.

"Please realize, what is being submitted to you is nine alleged separate acts of intercourse. I shouldn't say intercourse; I should say prostitution involving, in this particular case, [McAllister].

"Now, if you go through the elements, you will see, other than this general theory involving unlawfully and knowingly receiving money with intent to promote prostitution, unlawfully and knowingly receiving money, other than a prostitute being compensated for personally rendered prostitution services, pursuant to an agreement or understanding that the money was derived from prostitution activity, that particular language doesn't contain the name of the person. But if you look at the particular dates, and realize that it's simply an alternative theory; under this you could do that with regard to the other charges that involve the other two alleged victims."

Defendant did not object to the quoted general instruction or to the court's colloquy with the juror. When the court asked defendant's attorney whether he had any exceptions to the instructions given, counsel stated, "No exceptions." Further, defendant did not ask the court to instruct the jury that, to return a guilty verdict on a particular count, 10 or more of its members must agree on a specific factual incident involving a particular prostitute victim. The jury convicted defendant of the 37 counts submitted for its decision, including 22 counts of promoting prostitution, 14 counts of compelling prostitution, and one count of witness tampering.

At sentencing, the court stated that it was merging defendant's sentences for his convictions on 11 counts of promoting prostitution (Counts 11 through 19, 32, and 34) into

the sentences on 11 counts of compelling prostitution (Counts 21 through 29, 36, and 37) as lesser included offenses. The court thus imposed sentences on 26 counts: 11 counts of promoting prostitution (Counts 1 through 9, 33, and 35), 14 counts of compelling prostitution (Counts 21 through 29, and 36 through 40), and one count of witness tampering (Count 31). The court imposed the following sentences on defendant's convictions: Count 1, for promoting prostitution, a 40-month prison term with a three-year post-prison supervision term; Counts 2 through 9, 33, and 35, for promoting prostitution, 45-month prison terms and three-year post-prison supervision terms; Counts 21 through 29 and 36 through 40, for compelling prostitution, 70-month prison terms and 10-year post-prison supervision terms minus time served on the conviction; and Count 31, for witness tampering, a 30-month prison term and a two-year post-prison supervision term. The court ordered that the prison terms on Counts 21, 22, 23, 36, 37, and 38, for compelling prostitution, and the prison term on Count 31, for witness tampering, run consecutively. The remaining sentences were imposed to run concurrently to those sentences and each other. Defendant's total sentence was 450 months.

In his first assignment of error, defendant challenges each of his convictions, including the sentences that were "merged" into sentences for other convictions, on the ground that the trial court erred in failing to properly instruct the jury that, for each charged offense, 10 or more of its members must agree on a specific factual incident involving a particular prostitute victim. Defendant contends that the court's failure to do so violated the jury concurrence requirement imposed by Article I, section 11, of the Oregon Constitution.[3] Specifically, defendant argues that, for each count of the indictment that did not identify a specific victim and act of prostitution, the jury could have based its verdict on any number of multiple victims and acts of prostitution.

---

[3] Article I, section 11, provides, in part, that "in the circuit court ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise[.]" Although the parties describe the issue in this case as one of unanimity, that term is a misnomer in cases involving felonies other than murder. The issue here, for purposes of Article I, section 11, is one of concurrence of the required number of jurors, not unanimity.

For each count that identified a prostitute victim, defendant asserts that the jury could have based its verdict on "a wide variety of incidents." Finally, with respect to the witness tampering charge, defendant argues that the verdict could have been based on either of two incidents that occurred on two different dates.[4] Defendant acknowledges that he did not object at trial to the jury instructions in that regard. However, he argues that this court should exercise its discretion to review the error as one apparent on the face of the record. *See State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) (holding that, although the error was unpreserved, the trial court's failure to provide an instruction on jury unanimity in an aggravated murder case was error apparent on the face of the record).

The state initially responds that, under ORCP 59 H, the claimed error is not reviewable. That rule provides, in part:

"[N]o instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. Any point of exception shall be particularly stated and taken down by the reporter or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."[5]

The state reasons:

"Defendant's claim of error is clearly premised on a challenge to jury instructions given by the trial court. The record demonstrates that defendant raised no objection to the trial court's instructions and that he never noted any exception after the jury was instructed. The plain language of ORCP 59 H required defendant to complete both of those

---

[4] Because, as explained below, we reverse defendant's conviction for witness tampering on a different ground, we need not address that charge in our resolution of defendant's first assignment of error.

[5] Although it is a rule of civil procedure, ORCP 59 H is applicable to criminal jury trials. ORS 136.330(2).

steps to make his claim eligible for appellate review. He performed neither. To the contrary, he affirmatively waived any objection to the instructions given by the court. * * * As a consequence, although this court has jurisdiction over defendant's claim, because he did not comply with ORCP 59 H * * * his claim is not within the scope of this court's review, and this court consequently cannot review it."

The state's argument is a novel one. As far as we can tell, no similar argument was raised in *Lotches*. In fact, the court in that case did not discuss the instructions that the trial court gave or whether, for that matter, the trial court gave a uniform jury instruction along the lines of the one given here.[6] That fact is significant because, if the trial court in *Lotches* had given the uniform instruction or something like it, under the state's reasoning, in the absence of the defendant's objections, the reviewing court would have been required to reject the defendant's unpreserved challenge as unreviewable. However, that did not happen, nor should it have happened.

■ There was nothing wrong with the uniform instruction that the court gave, as far as it went. In fact, defendant does not contend that the instruction was erroneous. Rather, he complains that the trial court erred in failing to further instruct the jury that it must reach the requisite degree of concurrence regarding a particular factual incident and victim in order to convict him on any particular count. That notion is not captured in the uniform instruction but, rather, is a further refinement of it. In other words, defendant had no reason to object to the instruction that the court gave; instead, his argument on appeal is that the instruction, even as expanded during the court's colloquy with the juror, was incomplete. Accordingly, ORCP 59 H, which requires exceptions to instructions that the trial court actually gave, does not preclude our review of defendant's first assignment of error.

■ ■ Of course, that does not mean that defendant's unpreserved claim that the trial court erred in failing to give a further concurrence instruction regarding the promoting

---

[6] The instruction on which the state relies is identical to Uniform Criminal Jury Instruction 1013, an instruction that is commonly given in jury trials.

and compelling prostitution charges is automatically review-able. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 248-50, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) (holding that ORCP 59 H does not obviate the need to pre-serve, by requesting an instruction in the first instance, a claim that the trial court erred in failing to give the instruc-tion). Unpreserved instructional error cannot be reviewed on appeal unless the error is plain, that is, apparent on the face of the record. *See State v. Acremant*, 338 Or 302, 330, 108 P3d 1139, *cert den*, ____ US ____ (2005) (using descriptors inter-changeably). The elements of plain error are (1) the error must be one of law, (2) the legal point must be obvious, that is, not reasonably in dispute, and (3) to reach the error, "[w]e need not go outside the record or choose between competing inferences to find it[.]" *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

In addressing defendant's plain error argument, we initially note that what is at issue under the statutes describ-ing the offenses of promoting and compelling prostitution, ORS 167.012 and ORS 167.017, is defendant's conduct, not the conduct of the prostitute victims or their customers. With that caveat in mind, we briefly review the Supreme Court's decisions that guide our analysis. As noted, in *Lotches*, the Supreme Court addressed the jury unanimity requirement under Article I, section 11, in the aggravated murder context. In that case, the state had charged the defendant with three counts of aggravated murder of a single victim. Those counts were based on the murder having been committed in the course of the crimes of, respectively, attempted first-degree robbery, and attempted second-degree kidnapping, and in an effort to conceal the defendant's identity as the perpetrator of attempted murder. The evidence presented at the defen-dant's trial would have supported more than one charge of each of the underlying crimes because more than one victim was involved in the defendant's commission of each of the underlying crimes. Neither the indictment nor the jury instructions identified the particular victim or attendant cir-cumstances of any of the underlying crimes supporting the three aggravated murder counts. The trial court also did not

instruct the jury that it had to agree on the same set of facts to convict the defendant of each count of aggravated murder.

The Supreme Court began by examining whether the instructions were adequate in light of *State v. Boots*, 308 Or 371, 780 P2d 725 (1989). In *Boots*, the state had charged the defendant with aggravated murder based on two separate subsections of the aggravated murder statute—that the defendant had committed the murder in the course of robbery and that the defendant had committed the murder to conceal the identity of the robbers. The trial court had instructed the jury that the law did not require it to agree unanimously on either theory, if the jury unanimously agreed that the state had proved one, the other, or a combination of the two alleged aggravating factors. On review, the Supreme Court held that the instruction was erroneous because "[it] relieves the jury from seriously confronting the question whether they agree that any factual requirement of aggravated murder has been proved beyond a reasonable doubt, so long as each juror is willing to pick one theory or another." *Id.* at 375. The court, however, explained that "[w]e are not speaking here of factual details, such as whether a gun was a revolver or a pistol and whether it was held in the right or the left hand. We deal with facts that the law (or the indictment) has made essential to a crime." *Id.* at 379.

Applying *Boots* to the aggravated murder charges in *Lotches*, the court held that, "because the aggravated murder instructions that were given did not either limit the jury's consideration to a specified underlying felony or require jury unanimity concerning a choice among alternate [underlying] felonies, each instruction carried the same danger that this court had condemned in *Boots*." *Lotches*, 331 Or at 469. The court illustrated the problem presented in that case:

> "It is plain from the foregoing that the jury in the present case properly could not have convicted defendant of aggravated murder, for example, based on murder committed to conceal one's identity as the perpetrator of attempted murder, if half the jurors thought that defendant had attempted to murder Riley and half thought that he had attempted to murder Edwards. * * * [T]he unanimity rule requires that the jury agree as to 'just what defendant did'

to bring himself within the purview of the particular subsection of the aggravated murder statute under which he was charged."

*Id.* at 468-69 (quoting *Boots*, 308 Or at 380).

The court also determined that, although the defendant had not raised the error at trial, the error was apparent on the face of the record. The court concluded that the first and third plain error requirements were satisfied because "the question of what must be included in a jury instruction is a question of law, and what was or was not included is determined readily by examining the instructions that were given." *Lotches*, 331 Or at 472. The court also concluded that the legal point was "obvious" because *Boots* had established that a jury must be instructed on "the necessity of agreement on all material elements of a charge in order to convict." *Lotches*, 331 Or at 472. The court concluded that, because the factual distinctions between *Lotches* and *Boots* were not so significant "that a court reasonably could doubt what its duties respecting jury instructions would be[,]" the trial court's failure to provide an instruction on jury unanimity was error apparent on the face of the record. *Id.*

The Supreme Court next considered whether the same type of instructional error was error apparent on the face of the record in *State v. Hale*, 335 Or 612, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004). In *Hale*, the state charged the defendant with six counts of aggravated murder committed to conceal the commission and the identity of the perpetrator of the crime of third-degree sexual abuse, and four counts of aggravated murder committed to conceal the commission and the identity of the perpetrator of the crime of murder. At trial, the state presented evidence that the defendant or his codefendant (or both) could have committed the crime of third-degree sexual abuse against one or more victims. Similarly, for the counts based on the underlying crime of murder, there were three murder victims and two possible perpetrators of that crime. The court concluded that

"because the instructions that the jury was given with respect to each of the aggravated murder counts based on the crimes of third-degree sexual abuse and murder did not either limit the jury's consideration to a specific instance of

third-degree sexual abuse or murder, committed by a particular perpetrator against a particular victim, or require jury unanimity concerning a choice among alternative scenarios, each instruction carried an impermissible danger of jury confusion as to the crime underlying each count."

*Id.* at 627. The court then concluded that it should address the error as "apparent on the face of the record" for the same reasons stated in *Lotches. Id.* at 630.

Finally, in *State v. Sparks*, 336 Or 298, 83 P3d 304, *cert den*, 543 US 893 (2004), the court addressed another variant of the *Boots* problem. With respect to three counts of aggravated murder based on the underlying crime of first-degree sexual abuse, the defendant in *Sparks* argued on appeal that the trial court should have instructed the jury that it must unanimously agree on the same incident of first-degree sexual abuse to find the defendant guilty of aggravated murder as charged in those counts. The defendant made identical arguments with respect to those aggravated murder counts that were based on the commission of the crimes of first-degree kidnapping, second-degree kidnapping, first-degree attempted rape, and second-degree attempted rape. *Id.* at 312-13.

The defendant contended that the evidence presented at trial could have supported more than one instance of each of the five underlying crimes. Specifically, he argued that the state presented sufficient evidence to establish that each crime could have occurred at either, or both, of two distinct locations: the defendant's bedroom, where he first brought the victim, or a railroad embankment, where police found the victim's body. *Id.* at 313. The defendant argued that, under those circumstances, there was a substantial likelihood of jury confusion and, therefore, that the trial court was required to instruct the jury that it must unanimously agree on the factual circumstances that constituted the elements of each underlying crime to convict the defendant of a particular count of aggravated murder based on that crime. The defendant did not·object to the trial court's failure to give such an instruction. However, relying on *Lotches*, he argued that the Supreme Court should exercise its discretion to review the error as apparent on the face of the record.

The court rejected the defendant's argument:

"In *Lotches*, there were multiple possible victims for each of the underlying crimes. Similarly, in *Hale*, there were multiple possible victims and two possible perpetrators of each of the underlying crimes. In both of those cases, the jury was presented with multiple factual theories for each of the underlying crimes. It is not reasonably in dispute that a jury's failure to agree unanimously on either *the victim or the perpetrator* of the [underlying] crime would violate the jury unanimity rule, because both those facts are material elements of the underlying crimes.

"In this case, however, it is not 'obvious' that a jury's failure to agree unanimously on the precise location where defendant may have perpetrated the underlying crimes against the single victim would violate the jury unanimity rule. Nothing about the crimes charged in this case demonstrates that the precise location of the underlying crimes constitutes a material element of those crimes on which the jury must agree unanimously. In fact, the location of those crimes more logically constitutes a 'factual detail' that does not require jury unanimity. *Boots*, 308 Or at 379. The line between those facts that are essential to the crime and those that are merely factual details may not always be clear. However, defendant does not explain why the location of the underlying crimes constitutes a fact that the law makes essential to those crimes, as *Boots* discussed, and we cannot agree, without more, that defendant's legal proposition is 'obvious,' as this court applied that standard in *Hale* and *Lotches*. Because we conclude that the specific error alleged by defendant is not 'error apparent on the face of the record,' we do not address whether the trial court erred in the manner that defendant contends. *See State v. Reyes-Camarena*, 330 Or 431, 436, 7 P3d 522 (2000) (declining to address asserted error as apparent on face of record because legal point raised was not obvious)."

*Sparks*, 336 Or at 316-17 (emphasis in original).

Here, the state argues that, at most, the trial court "only arguably erred" in failing to give a further concurrence instruction to the jury. To properly evaluate the issue, we separately consider the groups of charges pertaining to each

particular prostitute victim.[7] Counts 1 through 9 charged defendant with promoting prostitution under ORS 167.012(1)(c) by receiving money from McAllister's prostitution activities. Although those counts did not specifically name McAllister as the victim, the trial court instructed the jury in its colloquy that those counts pertained to her. Counts 11 through 19 alleged that defendant had promoted prostitution by inducing McAllister to engage in prostitution. ORS 167.012(1)(b). Counts 21 through 29 charged defendant with compelling McAllister to engage in prostitution by means of force and intimidation.

All of the described counts stated that defendant committed the relevant conduct "on or between December 8, 2000, and December 15, 2000." The indictment did not describe the specific manner in which defendant committed any of those crimes. However, the state asserts that "the evidence at trial clarified what those acts were and who they involved." The state argues that the giving of the uniform jury instruction and the trial court's additional colloquy with the jury quoted above confirmed that "nine alleged separate acts of promoting or compelling prostitution involving * * * McAllister" were before the jury. According to the state, those instructions also confirmed that Counts 1 through 9 and 11 through 19 corresponded to two different theories of promoting prostitution, and that all 27 counts pertained to those nine separate acts of promoting and compelling prostitution. As the state sees it, the trial court told the jury "in essence, that three counts pertained to each of the nine acts being submitted to them." From this, the state concludes that "the jury instructions given by the trial court simply did not involve the omissions at issue in *Lotches*."

---

[7] In addressing that argument, we are mindful that

"an uncomfortable tension sometimes exists between the principle that a reviewing court is not permitted to review the merits of an unpreserved claim * * * and the practical reality that a court may have to do so to assess whether the error is an obvious one and not reasonably in dispute. *See also State v. Oatney*, 335 Or 276, 294, 66 P3d 475 (2003)[, *cert den*, 540 US 1151 (2004)] ('There is no reason to [consider whether an alleged error] is "error apparent on the face of the record" without first determining whether it was error at all.')."

*State v. Caldwell*, 187 Or App 720, 724 n 2, 69 P3d 830 (2003), *rev den*, 336 Or 376 (2004).

Defendant argues in turn that, although the state adduced evidence that he promoted and compelled acts of prostitution between McAllister and the nine customers described above, the evidence showed that she engaged in acts of prostitution with other customers as well. For example, McAllister testified that she would have sex with "anywhere from six to ten to fifteen" men per night. She also testified that "most of the time" she went to an apartment complex in Beaverton, where she and Kelly had sex with "anywhere from three to more" men. Further, defendant notes that, although the trial court stated in its colloquy with a juror that the evidence showed that McAllister had nine separate customers, the court did not identify those customers as to particular counts. Thus, defendant reasons that, as in *Lotches* and *Hale,* the jury was presented with multiple factual theories for each of the charged offenses involving McAllister and no clear instruction as to which counts related to which incidents. According to defendant, it follows that the trial court plainly erred by failing to give the jury a further concurrence instruction and the error was not harmless with respect to his convictions of those offenses. *See, e.g., Hale,* 335 Or at 628-30 (analyzing asserted harmlessness of error in failure to give a proper unanimity instruction by examining whether it is possible at appellate stage of the proceeding to determine whether the jurors reached necessary consensus on the victim, perpetrator, and attendant circumstances of the crimes charged).

As an initial matter, we observe that the state's theory of the case at trial and on appeal has been that each compelling and promoting prostitution count corresponded to the relevant prostitute's conduct with a specific customer. However, whether the state's theory of the case actually tracks the elements of the charged offenses is debatable. That is because the line between "material elements" of an offense and mere "factual details" is not always a clear and distinctive one. That uncertainty is present here. *See State v. Williams,* 119 Or App 129, 849 P2d 1155 (1993) (declining to review as plain error question of whether promoting and compelling prostitution are continuing crimes so that, when one person induces another to prostitution, the first person

has committed only one crime even though the other person thereafter commits many acts of prostitution).

Again, in *Boots*, the problem was that the state presented two theories of the case—murder in furtherance of robbery and murder to conceal the identity of the perpetrator of robbery—on which the trial court's instructions did not require the jury to agree. 308 Or at 375. In *Lotches*, the problem was that, in submitting to the jury charges of aggravated murder based on the underlying crimes of robbery, kidnapping, and attempted murder, the trial court failed to distinguish among multiple victims of the underlying crimes. 331 Or at 468-69. In *Hale*, where there were two perpetrators and three victims, the trial court's instructions did not require the jury to agree on specific instances of underlying "sexual abuse or murder, committed by a particular perpetrator against a particular victim[.]" 335 Or at 627. In *Sparks*, by contrast, the indictment charged the defendant with the aggravated murder of one victim in the course of committing sexual abuse, kidnapping, and rape, with multiple counts of each, and the state adduced evidence of multiple acts of each of the underlying crimes, not different theories for the same acts of aggravated murder. 336 Or at 312-13. The court held that the "location" of the underlying acts might not require jury unanimity, stating that the "line between those facts that are essential to the crime and those that are merely factual details may not always be clear." *Id.* at 317. Thus, the court concluded, the legal point was not "obvious." *Id.*

■ We conclude that this case more closely resembles *Sparks* than *Lotches* or *Hale*. The "victim" of the crime of compelling prostitution is the prostitute, not the prostitute's customer. Accordingly, this is not a situation where the jury might not have agreed on the "the victim or the perpetrator." Defendant was the only alleged perpetrator and McAllister was the only alleged victim of the relevant counts. The only determination for which concurrence might be required was the identification for each count of a factual incident in which McAllister performed an act of prostitution with a customer. However, in light of *Williams*, the question whether that determination is a "factual detail" or a "fact essential to the crime" is subject to reasonable dispute. That the state

advanced an "each customer" theory in support of the charges, in itself, cannot establish what the "material elements" of the offenses are.[8] Accordingly, the asserted error is not apparent on the face of the record.

The same analysis applies to the promoting prostitution convictions involving McAllister. Again, in those counts, the state alleged two theories for each of the nine customers—one theory of "receiving money" and a second theory of "inducing or causing" McAllister to engage in prostitution. With respect to the "receives money" convictions, there was evidence that McAllister regularly turned over the money to defendant after performing acts of prostitution with each of her customers. It is at least arguable that whether she turned money over after prostituting herself with the first customer, as opposed to a subsequent customer, is merely a "factual detail." For the same reason, with respect to the "induces or causes" convictions, it is also arguable that whether defendant engaged in the conduct of inducing or causing McAllister to perform acts of prostitution with each or any particular customer on a particular occasion is a factual detail. Accordingly, the trial court's failure *sua sponte* to give a further concurrence instruction to the jury was not error apparent on the face of the record with regard to the counts involving McAllister.

We turn to the counts involving Walford. As discussed, Count 32 (promoting prostitution by encouraging) and Counts 37 and 40 (compelling prostitution) identified Walford as the victim. Count 33 (promoting prostitution by receiving the proceeds thereof) did not identify a particular victim, but the state asserts that it applied to Walford. The state acknowledges that, because she had had so many customers while working for defendant, Walford could not distinctly recall any of them. The state argues, however, that, even though the trial court did not instruct the jury that Count 33 pertained to Walford, the jury must have known

---

[8] Defendant does not challenge on appeal the denial of his motion for a judgment of acquittal on the compelling and promoting prostitution charges, or in any other way call into question the state's decision to attempt to prove those crimes based on the number and identity of the customers with whom the victims engaged in acts of prostitution.

that it did because the indictment alleged that defendant had committed that offense between February and June 2000, the period during which Walford testified that she worked for defendant. Even though there was evidence that Kelly also worked for defendant during that period, the state argues that the jury must have known that Count 33 pertained to Walford because it immediately followed Count 32, which specifically named Walford as the victim, and both counts alleged the same date range.

■ We reject the state's argument pertaining to Count 33. There is nothing in the court's instructions or the indictment that identified Walford as the victim in Count 33. Nor is the proximity of that count to Count 32 in the indictment sufficient to vitiate the risk of jury confusion. Kelly also worked for defendant during the date range alleged in Count 33, and there was evidence that defendant promoted Kelly's prostitution activities by receiving her proceeds during that period. Moreover, Count 34, which immediately followed Count 33 in the indictment, named Kelly as the victim. In short, the court did not adequately instruct the jury as to which victim was implicated in Count 33; therefore, there was an impermissible danger of jury confusion as to the alleged conduct underlying that count. Accordingly, the error, like the similar errors in *Lotches* and *Hale*, is not reasonably in dispute.

As to the remaining counts expressly involving Walford, Counts 37 and 40, the state argues that defendant's reliance on *Lotches* is misplaced. According to the state, the principles described in *Lotches* apply only in cases where multiple underlying felonies could form the basis for one or more aggravated murder convictions. The state urges that, for cases such as this one, "the better analysis involves review of the statutes under which [the] defendant was charged and the evidence regarding those charges." Here, the state argues, because Walford testified about her activities collectively, no portion of the jury rationally could have convicted defendant of certain activities while other members based their decisions on other activities. With respect to the two charges of compelling prostitution, the state asserts that there was evidence of only two incidents in which defendant physically coerced Walford, one in the bathtub and the other

involving the wrestling-type altercation. It follows, the state urges, that the jury could not have been confused as to which incidents were involved in those counts.

■ We initially reject the state's argument that the principles followed in *Lotches* apply only to aggravated murder cases involving choices among multiple alternative underlying felonies. No such logical restriction exists. As discussed, Article I, section 11, not only requires jury unanimity in aggravated murder cases, it requires the concurrence of at least 10 jurors to convict a defendant of any crime tried in the circuit courts. For Article I, section 11, purposes, multiple alternative felonies underlying a charge of aggravated murder are not different in effect from multiple alternative factual theories underlying some other charged offense or multiple charges thereof. The risk of confusion in reaching such concurrence applies equally to any crime that is pleaded in multiple counts where a jury is inadequately instructed as to which factual theories and evidence apply to which counts. *See, e.g., Bogle v. Armenakis*, 172 Or App 55, 18 P3d 390 (2001), *adh'd to on recons*, 184 Or App 326, 56 P3d 420 (2002), *rev den*, 335 Or 180 (2003) (applying the *Lotches* rule to multiple theories of kidnapping). That does not necessarily mean, however, that defendant's convictions on the remaining counts involving Walford must be reversed and remanded.

First, as discussed with respect to the counts involving McAllister, the only determination for which concurrence might have been required was the identification for each count of a factual incident in which Walford performed an act of prostitution with a particular customer. However, the question whether that determination was a "factual detail" or a "fact essential to the crime" is subject to reasonable dispute. *See Williams*. Accordingly, the asserted error is not apparent on the face of the record. Equally significantly, as the state notes, there was evidence of only two incidents in which defendant compelled Walford to commit acts of prostitution. Because only two counts of that crime involving Walford were submitted to the jury, the court's error, if any, in failing to give a further concurrence instruction to the jury was harmless with respect to Counts 37 and 40. Accordingly, even assuming that the lack of a concurrence instruction was

error, we would decline to exercise our discretion to reach it. *See State v. Gutierrez*, 197 Or App 496, 106 P3d 670, *adh'd to on recons as modified*, 199 Or App 521, 112 P3d 433 (2005).

■ The analysis differs with respect to Count 32. As discussed, there was no evidence that defendant promoted a particular act of prostitution by Walford; there was only generic evidence that defendant promoted the commission of numerous acts of prostitution by Walford. Defendant does not contend that, because of a lack of specificity, the evidence was insufficient to convict him of Count 32.[9] Rather, defendant's complaint about the generality of the evidence pertaining to Count 32 is limited to his jury concurrence challenge. However, the rationale for the concurrence requirement is not implicated in these circumstances. The very generality of the evidence pertaining to Count 32 ameliorated any risk that members of the jury could have picked different factual incidents in convicting defendant of that charge. Accordingly, there was no error in failing to give a further concurrence instruction with respect to Count 32.

We turn to the charges involving Kelly. The indictment alleged that Counts 34 and 35 (promoting prostitution) and Counts 36, 38, and 39 (compelling prostitution) occurred between March 1, 1999 and December 15, 2000.[10] Counts 34, 36, 38, and 39 identified Kelly as the victim; Count 35 did not identify a victim. The state's arguments concerning the latter count mirror its arguments with respect to the charges involving Walford and McAllister. We reject them for the same reasons. Based on their overlapping periods of work for defendant, Count 35 could have pertained either to Walford or Kelly. Accordingly, in the absence of a further concurrence instruction, members of the jury could have found that defendant perpetrated that offense against either of them. As with Count 33, the error is apparent on the face of the record. *See Lotches*.

---

[9] In some circumstances, generic testimony may be insufficient, as a matter of law, to support a conviction on a specific act and therefore fail to satisfy the due process requirement of proving guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 US 307, 99 S Ct 2781, 61 L Ed 2d 560 (1979).

[10] One other count requires brief mention. As noted, Count 31 (witness tampering) also named Kelly as the victim but, as discussed below, we reverse that conviction on other grounds. Therefore, we do not separately discuss it here.

On the other hand, the failure to give a further concurrence instruction was not plainly erroneous with respect to the three counts of compelling prostitution involving Kelly. As with the compelling prostitution counts involving McAllister and Walford, the only determination for which concurrence might have been required was the identification for each count of a factual incident in which Kelly performed an act of prostitution with a particular customer. However, again, the question whether that determination was a "factual detail" or a "fact essential to the crime" is subject to reasonable dispute. *See Williams.* Accordingly, the asserted error is not apparent on the face of the record. Moreover, and in any event, as with Counts 37 and 40 involving Walford, Counts 36, 38, and 39 matched the state's evidence of only three incidents in which defendant compelled Kelly to engage in prostitution: (1) the near-drowning incident, (2) the choking incident, and (3) the incident in which defendant placed a pistol in Kelly's mouth. Because only three counts of that crime involving Kelly were submitted to the jury, the court's error, if any, in failing to give a further concurrence instruction to the jury was harmless with respect to Counts 36, 38, and 39, and we therefore would not exercise our discretion to reach it.

To summarize our conclusions thus far: The trial court erred in failing to give a further concurrence instruction with respect to Counts 33 and 35, for promoting prostitution, and the error is apparent on the face of the record. The error, if any, in failing to give such an instruction is not apparent on the face of the record as to the remaining counts of promoting and compelling prostitution.

■    Our conclusion with respect to Counts 33 and 35 requires us to consider whether, even though the instructional error is plain, we should exercise our discretion to review it. The state reminds us that an appellate court should exercise its discretion to consider such error only "with utmost caution" as review of plain error is "contrary to the strong policies requiring preservation and raising of error." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). The state argues that,

"if review is permitted for a defendant who remains silent in the face of a statutory obligation to speak up and who even affirmatively represents to the court that he has no objection, such a defendant is encouraged to gamble on the jury's verdict and, if it is adverse, attack the trial court's action for the first time on appeal, when it is too late for the trial judge to cure any problem."

As discussed, one of the premises of the state's arguments is invalid; the "statutory obligation to speak up" imposed by ORCP 59 H is inapplicable in this instance. The state's second premise depends on the first. Although defendant's attorney told the trial court that defendant had no exceptions to the instructions given, that statement did not pertain to instructions that the court failed to give. In short, both of the state's premises hinge on its view that defendant is not entitled to review because he violated ORCP 59 H. Because that view is mistaken, the state's argument fails. Here, at least, defendant made a jury concurrence argument on appeal. In *Lotches*, on the other hand, the Supreme Court apparently noticed the unanimity problem itself for the first time on appeal and nonetheless exercised its discretion to review and correct the error. Moreover, in *Hale*, the court exercised its discretion to review the error even though the defendant there, as was the case here, had neither made a motion to require the state to elect a specific incident for each offense *nor* sought a curative unanimity instruction. *Hale*, 335 Or at 621, 629-30.

However, our determination whether to exercise our discretion to review the error hinges on more than our rejection of the state's arguments concerning ORCP 59 H. In *Ailes*, the Supreme Court explained:

"[I]n deciding whether to exercise its discretion to consider an error of law apparent on the face of the record, among the factors that a court may consider are: the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in a particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any

error. Those factors do not comprise a necessary or complete checklist; they merely are some of the permissible considerations."

312 Or at 382 n 6 (citations omitted). In this case, the most significant factors affecting our exercise of discretion cut in different directions. On the one hand, defendant could have avoided the entire problem either by making a request for a further concurrence instruction or a motion requiring the state to elect a victim with respect to counts 33 and 35. He did neither. Moreover, the error arguably is not grave in terms of penalty. Defendant received concurrent sentences on both Counts 33 and 35. On the other hand, both convictions are for serious felonies that were not merged into other convictions. On balance, we give the latter factor the most weight. Accordingly, we exercise our discretion to correct the error by reversing defendant's convictions on Counts 33 and 35 and remanding them for a new trial.

To summarize our disposition of defendant's first assignment of error: The trial court erred in failing to give a further concurrence instruction that identified a particular prostitute victim with respect to Counts 33 and 35 for promoting prostitution. The error was apparent on the face of the record, and we exercise our discretion to review it. *Lotches*, 331 Or at 472. Accordingly, we reverse defendant's convictions on those counts and remand them for a new trial. However, the trial court either did not plainly err by failing to give a further concurrence instruction with respect to the remaining counts of promoting and compelling prostitution, or the error, if any, was harmless and we therefore decline to reach it.

■ Defendant's second assignment of error requires little discussion. Defendant asserts that the trial court erred in denying his motion to exclude evidence of his violent acts and threats against McAllister, Walford, and Kelly. The short answer to defendant's argument is that none of that evidence was offered for a purpose proscribed under OEC 404(3), the rule on which he relies.[11] Under OEC 404(4), evidence of

---

[11] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

"other crimes" is admissible in a criminal case if it is relevant, as long as neither the state nor federal constitutions require balancing for unfair prejudice. ORS 40.170(4). However, the questioned evidence was not, in fact, "other crimes" evidence at all. Instead, it was relevant to prove elements of the charges of compelling prostitution that have survived the challenge of defendant's first assignment of error. In each instance, the evidence either showed that defendant was involved in prostitution activities or that he compelled one or more of the victims to engage in such activities. The state is entitled to offer evidence of the crimes with which a defendant is charged. *State v. Carsner*, 117 Or App 406, 408, 844 P2d 257 (1992), *rev den*, 317 Or 163 (1993); *State v. Earp*, 69 Or App 365, 368, 686 P2d 437, *rev den*, 298 Or 334 (1984).[12]

In his third assignment of error, defendant argues that the trial court erred in denying his motion for a judgment of acquittal on Count 31, charging him with tampering with a witness. ORS 162.285(1)(b) provides that a person commits the crime of tampering with a witness if the person "knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the witness has been legally summoned." Count 31 alleged that, on or between January 1 and January 19, 2001, defendant knowingly "induce[d] and attempt[ed] to induce [Kelly], a witness, to absent herself from a legal proceeding to which said witness had been legally summoned[.]"

The state concedes that the evidence does not support defendant's conviction on Count 31, and we agree. The evidence showed that defendant's efforts to induce Kelly not to testify occurred during telephone conversations on January 4 and January 11, 2001. However, Kelly had not been summoned to any official proceeding when those conversations occurred. Because the state did not prove that element of the offense, the trial court erred in denying defendant's motion for a judgment of acquittal on Count 31.

---

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[12] We reject without discussion defendant's further argument that the trial court abused its discretion in failing to exclude the evidence under OEC 403.

In his fourth assignment of error, defendant contends that the trial court erred, in sentencing him on Counts 36 through 40, by imposing post-prison supervision terms of 10 years minus time served in prison. The court imposed a 70-month prison term on each of the convictions for compelling prostitution under ORS 137.700(2)(b) and (c). The state concedes that the trial court was not authorized to impose the challenged post-prison supervision terms and that it erred in doing so. In light of our reversal of defendant's conviction on Count 31, and reversal and remand of Counts 33 and 35, the case must be remanded for resentencing of all counts. *See State v. Rodvelt*, 187 Or App 128, 66 P3d 577, *rev den*, 336 Or 17 (2003). Accordingly, the fourth assignment of error is moot.

In two supplemental assignments of error, defendant contends that the trial court erred in sentencing him by imposing multiple convictions and consecutive sentences for crimes committed against the same victim. He argues that, under *Blakely* and *Apprendi*, the state was required to plead the facts supporting those matters in the indictment and to prove those facts to a jury. Defendant concedes that he did not preserve those arguments, but he urges us to review them as plain error. Because each of defendant's convictions will be resentenced on remand, those assignments of error also are moot.

Convictions on Counts 33 and 35 reversed and remanded; conviction on Count 31 reversed; remaining sentences vacated; remanded for resentencing; otherwise affirmed.